## STANDARD OIL CO. OF CALIFORNIA v. TIDE WATER ASSOCIATED OIL CO.

### No. 40.

District Court, D. Delaware.

Jan. 30, 1942.

E. Ennalls Berl, of Wilmington, Del., Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., and Charles M. Thomas, of Washington, D. C., for plaintiff.

Richards, Layton & Finger, of Wilmington, Del., and Harris, Kiech, Foster & Harris, of Los Angeles, Cal., for defendant.

WATSON, District Judge.

This suit was filed in this court by plaintiff to enjoin the infringement of plaintiff's three "cold treatment" patents Nos. 1,705,809, 1,864,755 and 1,869,885, and to recover the profits and the damages arising from the infringement thereof by defendant, Tide Water Associated Oil Company, and its predecessor in business, Associated Oil Company.

The defendant, by its amended answer, asserted a defense of license under plaintiff's said "cold treatment" patents. The case was set down for a separate trial up-

on, and is now before the court for adjudication of, this pleaded defense of license.

For the purposes of this discussion, the acts of defendant's predecessor, Associated Oil Company, will be attributed to the defendant, and Charles W. Stratford and the Stratford Development Corporation will be referred to as Stratford.

From the evidence submitted the facts are found as follows:

Stratford was, prior to January 20, 1926, an employee of the defendant, and while so employed made certain inventions. On January 20, 1926, Stratford and another employee of defendant entered into an agreement with the defendant with regard to the inventions made by these employees. On April 13, 1934, Stratford entered into another contract regarding certain patents and inventions with the defendant. Insofar as they are material to this discussion these contracts provide that with respect to certain inventions described in the January 20, 1926 agreement, "Stratford agrees that Stratford and each of the licensees of Stratford shall communicate to Associated any and all improvements or developments discovered or acquired by them, or any of them, in said inventions or in connection with any plant or apparatus utilizing said inventions, and that Associated and its proprietary, affiliated or subsidiary companies as herein defined, shall be entitled to use such improvements and developments free of any royalty or other payment or obligation." On April 26, 1935, Stratford and plaintiff entered into an agreement wherein plaintiff granted to Stratford the exclusive right to extend to others non-exclusive licenses to use the patents here in suit—Nos. 1,705,809; 1,864,-755; and 1,869,885. On April 13, 1937, Stratford and plaintiff entered into another and similar agreement relating to the same subject matter. Under these agreements plaintiff acquired an option to use certain patents owned by Stratford. Plaintiff has never used a process or device covered by these patents of Stratford. The agreements between plaintiff and Stratford dealt with the conditions under which Stratford could grant licenses and set forth conditions governing the conduct of the parties with regard to the subject matter of the agreements. Under the 1937 agreement, plaintiff was given the right to license the Texas Company under plaintiff's patents. On November 1, 1937, defendant notified plaintiff of the contracts entered into by defendant and Stratford. Thereafter, plaintiff filed for Stratford an application for a patent and obtained from Stratford an assignment of the application and the patent granted pursuant thereto, No. 2,190,247. I also find that under the evidence plaintiff is not a licensee of Stratford; that plaintiff is not a partner of Stratford; that plaintiff and Stratford are not engaged in a joint enterprise; and that plaintiff is not an assignee of Stratford's rights under his agreements with defendant.

### Discussion.

The questions presented may be divided into two classes: First, whether or not plaintiff is bound by the terms of defendant's contracts with Stratford; and second; if it be determined that plaintiff is so bound, whether or not the patents in suit are such that defendant is entitled to a license thereunder by virtue of its contracts with Stratford.

By their express terms, the contracts of defendant with Stratford are binding upon Stratford and Stratford's licensees. It will be assumed herein without being decided that plaintiff's patents are such that if plaintiff were bound by the defendant-Stratford contracts the defendant would automatically receive a royalty free license thereunder.

██ The first contention of the defendant is that the plaintiff is a licensee of Stratford by virtue of two written contracts of plaintiff with Stratford. The relevant portions of these contracts provide "Stratford hereby agrees that it will, when demanded by Standard, grant to Standard and/or any or all of its wholly-owned or stock-controlled subsidiaries, a non-assignable, non-transferable, non-exclusive license to employ at any of the present or future refineries of Standard * * * the inventions covered by Stratford's Acid Contacting Patents * * *". And, "Stratford hereby agrees that it will, when demanded by Standard, grant to Standard * * * a nonexclusive license to employ * * * the inventions covered by Stratford's Acid Contacting Patents. * * *". These paragraphs clearly give to plaintiff only an option to obtain a license and do not grant presently a license to the plaintiff. These paragraphs require an additional act by the plaintiff, i. e., demand, before plaintiff acquires a license. Further, the evi-

dence discloses that plaintiff has never used the patents to which the option agreement referred. The defendant contends that the court should construe the quoted paragraphs as a license because the contracts as a whole indicate that the parties intended to grant a license. I find nothing in the contracts which would warrant such a conclusion.

■ The defendant contends that even if the parties intended to grant only an option, it should be construed as a license because it was designed to avoid the obligations of Stratford and plaintiff to the defendant. Whether or not plaintiff prepared these agreements with full knowledge of and with intent to evade the terms of defendant's contracts with Stratford is immaterial. The plaintiff was under no duty to become a licensee but had a perfect right to reserve the privilege of obtaining a license with its attendant burdens if it at a later time decided that such a course was desirable. There is not the slightest bit of evidence to show that the plaintiff has by virtue of the option agreement taken any unfair advantage of the defendant.

The defendant further contends that the paragraphs above quoted should be construed as licenses because they are agreements to grant a license and, under the decisions, such agreements are construed as licenses. The defendant relied upon the following cases: American Paper-Bag Co. v. Van Nortwick, 7 Cir., 52 F. 752; Moto Meter Co. v. National Gauge & Equipment Co., D.C., 31 F.2d 994; Frost Ry. Supply Co. v. T. H. Symington & Son, Inc., D.C., 24 F.Supp. 20; American Telephone & Telegraph Co. v. Radio Audion Co., D.C., 281 F. 200; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 6 Cir., 77 F. 288, 35 L.R.A. 728; Keystone Type Foundry v. Fastpress Co., 2 Cir., 272 F. 242; Bijur Motor Lighting Co. v. Eclipse Machine Co. et al., D.C., 237 F. 89. None of the cited cases are in point. In American Paper-Bag Co. v. Van Nortwick, Keystone Type Foundry v. Fastpress, and Frost Ry. Supply Co. v. T. H. Symington & Son, Inc., the licensees had used the patented matter with the knowledge and consent of the licensors, and it was held that under those circumstances the agreements to grant a license were effective as grants of a license without the necessity of the execution of a formal license agreement. These cases clearly have no application here, because the plaintiff never used the patented

matter, and neither Stratford nor the plaintiff has indicated in any way that the relationship of licensor-licensee existed between them. The remaining cases upon which defendant relies do not involve facts in any way similar to the facts here involved, and are relevant only for their statement of the general proposition that a license is nothing more than an exemption from suit for infringement. The defendant contends that since the agreement is effective to prevent a suit for infringement if plaintiff uses the patented matter even though a formal license is not executed, the agreements are, therefore, the equivalent of a license in that they confer upon plaintiff all the rights of a licensee. This argument is indeed ingenious. Its only fallacy lies in the fact that it ignores the basis of the decisions in the cases cited that such an agreement in conjunction with certain acts of the parties in reliance thereon confers an immunity from suit for infringement. The agreements themselves do not confer nor do they purport to confer a license or immunity from suit.

The defendant also contends that plaintiff is a licensee of Stratford because the language of paragraph 9 of the agreement of April 13, 1937, between Stratford and plaintiff, allegedly grants to plaintiff the right to sue for the infringement of the Stratford patents. This paragraph provides as follows:

"9. Suit by Standard or Stratford. In the event either party hereto brings suit against a third party for infringement of one or more of the Cold Treatment or Acid Contacting Patents, and said third party defendant takes a license under the Cold Treatment and Acid Contacting Patents, either during the pendency or following a settlement or adjudication of the suit all royalties received from such licensee accrued subsequent to the date of said license shall be paid to the party bringing the suit until such time as the sum thus paid shall equal the expenses incurred by such party plaintiff in the prosecution of said suit, following which all such royalties shall be paid to the other party to this agreement, until such time as the sum thus paid shall equal the expenses, if any, incurred by such party in direct connection with the prosecution of such suit, insofar as such expenses were unavoidable or at the plaintiff's request. When the above-named expenses have been paid as provided above, royalties from such licensees shall thereafter be

divided in accordance with Clause 5 hereof."

This contention is clearly without merit because the paragraph referred to does not purport to grant authority to any one to bring suit for the infringement of the Stratford patents. It deals only with the division of royalties after such infringement suits are brought. Furthermore, this paragraph does not even intimate that it is contemplated by the parties that plaintiff should sue for the infringement of the Stratford patents.

■■■ The defendant's next contention is that plaintiff is a licensee of Stratford because under paragraph 23 of the agreement of April 13, 1937 between Stratford and plaintiff, plaintiff is given the right to grant a license to the Texas Company under the Stratford patents. The first part of this paragraph authorizes plaintiff to license the Texas Company, but does not in any way indicate the patents under which the plaintiff was authorized to grant a license. The remainder of the paragraph deals with the distribution of the royalties to be paid by The Texas Company and provides that out of certain specified royalty payments, Stratford shall receive as full compensation certain specified sums and then it is provided that plaintiff "shall assume such liability as Stratford owes to Associated Oil Co. * * *" by reason of the use by The Texas Company of "any of the inventions licensed." The defendant contends that since the paragraph contemplates the payment of royalties under the Stratford patents, and authorizes the plaintiff to grant a license to the Texas Company, the plaintiff must have the right to grant a license to the Texas Company under the Stratford patents and, thus, is a licensee itself. If this paragraph stood alone, the defendant's contention would, perhaps, have considerable merit. However, the evidence shows that plaintiff granted The Texas Company a license under plaintiff's patents only, and that Stratford granted The Texas Company a license under the Stratford patents. The language used in paragraph 23 is ambiguous and, therefore, the court may look to the actions of the parties in determining the proper construction of the agreement. The plaintiff contends that this paragraph was designed to permit plaintiff to grant a license to The Texas Company under plaintiff's patents only. In this regard, the actions of the parties tend to support the plaintiff's contention. Furthermore, the plaintiff was required to retain authority to grant a license under its own patents because the agreement assigned to Stratford an exclusive right to grant licenses under plaintiff's patents. Since the parties contemplated at the time of the making of this agreement that The Texas Company should be licensed under both the Stratford and the plaintiff's patents, the actions of the parties pursuant to the agreement are a better indication of their intention than the inference to be drawn from another provision of the agreement which of itself casts light upon the question only by implication and deals with a different subject. Therefore, since the parties to the contract treated the authority granted to the plaintiff as authority to grant a license as to plaintiff's patents alone, I believe that it was their intention that the plaintiff should have only that authority and the contract should be so construed. In this connection it should be noted that the provisions relating to the royalties to be paid by The Texas Company dealt with the royalty payments for both the Stratford and plaintiff's patents and, therefore, of necessity dealt with Stratford's obligations to defendant. Under these circumstances, the provision relative to these obligations is of little value in determining the true intent of the parties relative to the extent of the authority granted to plaintiff to license The Texas Company.

■ One further factor tending to support plaintiff's argument is that, in the defendant's contract of April 13, 1934 with Stratford, it is provided that "Neither this agreement nor any of Stratford's rights hereunder shall be assigned by Stratford * * * without Associated's prior written consent." One of the rights so granted to Stratford, it is contended by the defendant, is the exclusive right to grant licenses under at least some of the Stratford patents, under which The Texas Company was licensed. It is to be assumed, without determining whether or not Stratford had the power to grant such right to the plaintiff, that Stratford did not intend to violate his agreement with the defendant by granting to the plaintiff the right to license The Texas Company under the Stratford patents.

■ The defendant further contends that plaintiff is a licensee of Stratford because Stratford assigned to plaintiff patent No. 2,190,247 and, by virtue of this assignment, plaintiff became a "licensee and more" of

Stratford. To state the contention in a different way, the defendant contends that the owner of a patent is a licensee. When thus stated, the fallacy of defendant's argument is obvious.

I have carefully studied the record and the briefs which have been submitted, and find no arguments therein persuasive of a decision other than the one which I have reached, namely, that the plaintiff was not a licensee of Stratford and was not bound by the obligations of defendant's contracts with Stratford. There remains but one matter which I feel should here receive consideration.

The defendant contends that the plaintiff's relationship with Stratford is of such nature that unless plaintiff is bound by the obligations of Stratford's contracts with defendant, a fraud will be perpetrated upon the defendant; that the plaintiff has taken such advantage of the benefits granted by the defendant to Stratford that the plaintiff should be in some manner bound by the obligations of the contracts between Stratford and defendant. To this end, the defendant has suggested that the plaintiff be subjected to these contracts as a partner of Stratford, as a participant in a joint enterprise with Stratford, and as an equitable assignee of Stratford's rights under his contracts with defendant. Without setting forth in detail the transactions between Stratford and plaintiff, which the defendant contends constitute a fraud upon its rights, the allegedly fraudulent conduct of the plaintiff arises largely from the provisions of the agreements between plaintiff and Stratford wherein Stratford was authorized to grant licenses under plaintiff's patents. The agreements contemplated the exploitation of plaintiff's patents and the Stratford patents under a single license agreement providing for the payment of a single royalty for all patents so licensed and a division of this royalty between plaintiff and Stratford without an expressed basis of division dependent upon the value of the plaintiff's patents as compared with the value of the Stratford patents. The essence of defendant's argument based upon these factors is that the Stratford patents are being used by plaintiff through Stratford to promote the sales of plaintiff's patents, and thus the plaintiff is obtaining the benefit of defendant's agreements with Stratford. This argument, however, does not receive support because from the evidence it clearly appears that Stratford regarded the arrangement as advantageous to himself in the promotion of his patents. This is shown in part by the fact that Stratford, under each license granted, receives of the royalty for both the Stratford and plaintiff's patents a sum less than that which he received when he granted licenses under the Stratford patents alone, and, consequently, Stratford must have believed that his control of plaintiff's patents would enable him to secure a larger number of licensing agreements than would be obtainable for the Stratford patents alone. It is, of course, also true that the agreement was advantageous to plaintiff, but, from the evidence, I find nothing to indicate that plaintiff has so taken advantage of Stratford's rights under his agreements with defendant that plaintiff must be bound by the obligations of those agreements to to prevent a fraud upon defendant.

The conclusions which I have reached make it unnecessary to consider the questions raised with regard to the second of the classes of questions hereinbefore referred to.

### Conclusions of Law.

1. Plaintiff is not a licensee of Stratford under the Stratford patents.

2. Plaintiff is not a partner of Stratford.

3. Plaintiff and Stratford are not engaged in a joint enterprise.

4. Plaintiff is not an equitable assignee of defendant's agreements with Stratford.

5. Defendant is not licensed under the patents in suit.

Now, January 30, 1942, it is ordered, adjudged, and decreed that defendant, Tide Water Associated Oil Company, is not licensed under any of the patents in suit numbered 1,705,809; 1,864,755; and 1,869,885; and that the defense of license has not been proved.